**United States District Court**
**For The Southern District of Florida**

Mary Beeson,

      Plaintiff,

                                 Civil Action No.

vs.

Seterus, Inc.,

      Defendant.

_____/

**Complaint and Demand for Jury Trial**

Plaintiff, Mary Beeson, sues Defendant, Seterus, Inc., for monetary relief, including attorney fees and costs, and respectfully demands judgment against the Defendant on all claims pled against it in this complaint. Plaintiff brings this action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, its implementing regulation, Regulation X, 12 C.F.R § 1024 ("Regulation X") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., for violations of the RESPA and the FDCPA. The ultimate facts supporting Plaintiff's entitlement to the requested relief are articulated in the numbered paragraphs below.

Jurisdiction, Venue, and Parties

1.      This Court has subject matter jurisdiction over Plaintiff's claim under the RESPA and Regulation X pursuant to 12 U.S.C. § 2614 and under the FDCPA pursuant to 15 U.S.C. § 1692(k) .

2.      Venue is proper in Broward County, County Court as the real property that is the subject of this action is located in Broward County and this is an action for damages that does not exceed Fifteen Thousand Dollars ($15,000.00).

3.      Plaintiff is Florida resident residing in Broward County, Florida.

4.      Defendant is a corporation with its principal place of business in the State of North Carolina. At all times material to this action, Defendant regularly transacted business in the state of Florida.

Introduction

5.      In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), Public Law No. 111-203, 124 Stat. 1376 (2010).

6.      Specifically, on July 10, 2013, the CFPB issued mortgage rules under Regulation Z and Regulation X pursuant to its authority under the DFA, which became effective on January 10, 2014.

7.      Defendant is a loan "servicer" of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2) (the "Loan"). Defendant receives payments from consumers and is responsible for distributing those payments to the investors who own the consumers' loans and, when the consumers' loans include escrow accounts, to the consumers' taxing authorities or insurance companies. Thus, it is a servicer within the meaning of RESPA. 12 C.F.R. § 1025.2(b). Thus, the Defendant is subject to the servicing requirements provided for in the RESPA and Regulation X.

8.      Defendant is a "debt collector" as that term is defined in the FDCPA, 15 U.S.C. § 1692(a)(6).

9.      RESPA and Regulation X are applicable to all "federally related mortgage loans", which include any loans secured by a first or subordinate lien on residential real property upon which a one-to-four family structure is located and which is made in whole or in part by any lender that is either regulated by or whose deposits or accounts are insured by an agency of the Federal

Government. *See* 12 C.F.R. § 1024.2. Accordingly, Plaintiff's Mortgage is a "federally related mortgage loan" as defined in Regulation X. *Id.*

10.     Plaintiff is asserting a claim for relief against Defendant for breaches of the specific rules under Regulation X as set forth below.

11.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, attorneys' fees and costs.

<u>Factual Allegations</u>

12.     On July 22, 2010, a lawsuit was filed against the Plaintiff for foreclosure of the Loan in Broward County Circuit Court Case No. CACE10-29833 (the "Foreclosure Action").

13.     On May 27, 2014, a final judgment of foreclosure was entered against the Plaintiff in the Foreclosure Action.

14.     On May 7, 2015, Defendant sent to Plaintiff a letter acknowledging receipt of the Plaintiff's completed loss mitigation application (the "Complete Application Letter"). A copy of the Complete Application Letter is attached as Exhibit "A".

15.     On May 18, 2015, Plaintiff sent to Defendant a letter designating "[a]ll employees of Bruce Botsford, PA, Da'vid Abellard, Jr., Lynne Warshaw, James Beeson" as her authorized third party agents (the "TPA"). A copy of the TPA is attached as Exhibit "B".

16.     On May 27, 2015, Defendant's foreclosure counsel took an affirmative step towards an order of sale by submitting to the Clerk of Courts a Notice of Sale which gave public notice of the foreclosure sale of the Property scheduled for July 7, 2015. A copy of the May 27, 2015 Notice of Sale is attached as Exhibit "C".

17.     On May 28, 2015, Plaintiff sent to Defendant a Notice of Error alleging that Defendant was refusing to speak to any of the parties Plaintiff authorized in her TPA. A copy of the May 28th NOE is attached as Exhibit "D".

18.     On May 29, 2015, Plaintiff sent to Defendant a Request for Information requesting that the Defendant provide her with certain items in her "Servicing File." A copy of the May 29th Request for Information is attached as Exhibit "E".

19.     On June 26, 2015, Plaintiff sent to Defendant a Notice of Error putting the Defendant on notice that it was in violation of "§ 1024.35(b)(10) and § 1024.41(g) by continuing to move for an order of sale while we have a complete loss mitigation application pending." A copy of the June 26th Notice of Error is attached as Exhibit "F".

20.     On July 2, 2015, Defendant filed an Emergency Motion to Cancel Foreclosure Sale on the alleged basis that it was actively reviewing the Plaintiff for loss mitigation. A copy of the July 2nd Emergency Motion to Cancel Foreclosure Sale is attached as Exhibit "G".

21.     On July 7, 2017, an order was entered denying the Defendant's July 2nd Emergency Motion to Cancel Foreclosure Sale. A copy of the order denying the Defendant's July 2nd Emergency Motion to Cancel Foreclosure Sale is attached as Exhibit "H".

22.     As a result of the Defendant's inability to have the July 7th foreclosure sale cancelled, the Property proceeded to auction, and on July 8, 2017, a certificate of sale was issued in favor of Federal National Mortgage Association. A copy of the certificate of sale is attached as Exhibit "I".

23.     On July 13, 2015, Plaintiff sent to Defendant a Notice of Error alleging that the Defendant had acted in violation of § 1024.41(g) by taking steps towards conducting a judicial foreclosure sale while there was a facially complete loss mitigation application pending. A copy of the July 13th Notice of Error is attached as Exhibit "J".

24.     On July 17, 2015, Plaintiff retained the services of an attorney and filed an Objection to Sale in the Foreclosure Action on the grounds that the sale should have been cancelled due to the Plaintiff's pending loss mitigation application which was in review. A copy of the Objection to Sale is attached as Exhibit "K".

25.     On July 24, 2015, Defendant sent a letter to Plaintiff providing certain information that had been previously requested by the Plaintiff. The letter also notified the Plaintiff that the Defendant was in the process of "submitting a request to Fannie Mae to vacate the foreclosure sale because Ms. Beeson was not properly notified of the missing bank statements." A copy of the July 24th Response Letter is attached as Exhibit "L".

26.     On July 27, 20215, Plaintiff sent four separate Notices of Error alleging that Defendant had made the following errors:

a.   Defendant failed to provide "any and all telephone 'call notes', 'call logs', list of all outbound calls conducted by an autodialer, robo dialer, automated technology created by your Company's personnel…" A copy of this Notice of Error is attached as Exhibit "M".

b.   Defendant published a notice of sale on June 8, 2015 and June 15, 2015 in violation of 12 CFR § 1024.41(g). A copy of this Notice of Error is attached as Exhibit "N".

c.   Defendant failed to give the Plaintiff accurate information about her loss mitigation options in violation of 12 C.F.R. § 1024.35. A copy of this Notice of Error is attached as Exhibit "O".

d.   Defendant failed to provide a missing document letter requesting Plaintiff's most recent bank statements which would have allowed her to be evaluated for all loss mitigation options. A copy of this Notice of Error is attached as Exhibit "P"

27.     On August 31, 2015, an order was entered granting the Plaintiff's Objection to Sale and rescheduling the foreclosure sale for January 12, 2016. A copy of the Order granting the Plaintiff's Objection to Sale is attached as Exhibit "Q".

28.     On November 9, 2015, Plaintiff sent to Defendant a Notice of Error alleging that the Defendant had failed to properly and timely evaluate the Plaintiff's loss mitigation application. A copy of the November 9th Notice of Error is attached as Exhibit "R".

29.     On December 1, 2015, and while the Plaintiff's loss mitigation application was still pending and being reviewed, Defendant's foreclosure counsel yet again proceeded towards an order of sale by submitting to the Clerk of Courts a Notice of Sale which gave public notice of the foreclosure sale of the Property scheduled for January 12, 2016. A copy of the December 1st Notice of Sale is attached as Exhibit "S".

30.     On December 3, 2016, Defendant sent to Plaintiff a letter confirming that she had been approved for a trial modification plan (the "Trial Modification Letter"). A copy of the Trial Modification Letter is attached as Exhibit "T".

31.     On December 28, 2016, the Defendant filed a Motion to Cancel Foreclosure Sale on the grounds that it was reviewing the Plaintiff for "possible loan modification." A copy of the December 28th Motion to Cancel Foreclosure Sale is attached as Exhibit "U".

**Count I – Failure to Properly Prohibit Foreclosure Sale**
**Violation of Regulation X, Section 12 C.F.R. § 1024.41(g)**

32.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

33.     Section 1024.41(g) of Regulation X provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale…." 12 C.F.R. § 1024.41(g).

34.     On May 7, 2015, Plaintiff sent to Defendant the Complete Application Letter which acknowledging its receipt of the Plaintiff's complete loss mitigation application. See Exhibit "A".

35.     However, after having received the loss mitigation application and having acknowledging receipt of a complete application, Defendant instructed its foreclosure counsel to pursue a foreclosure sale by having the Notice of Sale issued by the Clerk of Courts on May 27, 2015. See Exhibit "C".

36.     Further, the Defendant's Motion to Cancel Foreclosure Sale filed on July 2, 2015, merely five days before the scheduled sale, failed to reference that the Defendant had received a complete loss mitigation application, and failed to reference the specific federal regulations which prevented the foreclosure sale from moving forward. See Exhibit "G".

37.     Therefore, Defendant's actions in pursuing the foreclosure sale of the Plaintiff's Property and the general insufficiency of its Motion to Cancel Foreclosure Sale, violate 12 C.F.R. § 1024.41(g) and its prohibition on foreclosure sales during the review of a loss mitigation application.

38.     As a result, Plaintiff incurred actual damages in the form of (1) attorney's fees incurred in the Plaintiff's foreclosure action, including but not limited to the filing of the objection to sale, as a result of Defendant's unfair and deceptive actions; (2) costs to prepare each subsequent request for information and notice of error, including Notices of Error sent on June 26, 2015, July 13, 2015, and July 27, 2015; (3) costs incurred in connection with the photocopying and mailing of the requests for information and notices of error; (4) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

39.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**Count III – Failure to Properly Prohibit Foreclosure Sale**
**Violation of Regulation X, Section 12 C.F.R. § 1024.41(g)**

40.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

41.     Section 1024.41(g) of Regulation X provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale…." 12 C.F.R. § 1024.41(g).

42.     On May 7, 2015, Plaintiff sent to Defendant the Complete Application Letter which acknowledging its receipt of the Plaintiff's complete loss mitigation application. See Exhibit "A".

43.     On August 31, 2015, an order was entered granting the Plaintiff's Objection to Sale and rescheduling the foreclosure sale for January 12, 2016. *See* Exhibit "Q".

44.     On December 1, 2015, and while the Plaintiff's loss mitigation application was still pending and being reviewed, Defendant's foreclosure counsel yet again proceeded towards an order of sale by submitting to the Clerk of Courts a Notice of Sale which gave public notice of the foreclosure sale of the Property scheduled for January 12, 2016. *See* Exhibit "S".

45.     However, because the Plaintiff's loss mitigation application was still in review, the Defendant was prohibited from pursuing a foreclosure sale of the Property by causing the issuance of the Notice of Sale.

46.     Defendant's actions in pursuing the foreclosure sale of the Plaintiff's Property violate 12 C.F.R. § 1024.41(g) and its prohibition on foreclosure sales during the review of a loss mitigation application.

47.     As a result, Plaintiff incurred actual damages in the form of attorney's fees incurred in the Plaintiff's foreclosure action because of Defendant's pursuit of a foreclosure sale of the Property. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

48.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**Count IV – Failure to Comply with Standard Servicer Duties**
**Violation of RESPA, Section 12 U.S.C. § 2605(k)**

49.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

50.     12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not – (C) fail to take timely action to respond to a borrower's request to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

51.     On May 18, 2015, Plaintiff sent to Defendant a third-party authorization notice (the "TPA") authorizing the Defendant to contact certain individuals in connection with the servicing of the Plaintiff's mortgage loan. See Exhibit "B".

52.     After receiving the TPA, the Defendant continued to refuse to speak with any of the Plaintiff's authorized persons.

53.     Defendant's failure to speak with the Plaintiff's authorized third party agents, after having already received the TPA, constitutes a failure to comply with "…standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

54.     As a result of the Defendant's violation, the Plaintiff was forced to send a Notice of Error on May 28, 2015 giving the Defendant notice of its erroneous refusal to speak with Plaintiff's third party agents. See Exhibit "D".

55.     As a result, Plaintiff incurred actual damages in the form of (1) costs to prepare the May 28, 2015 Notice of Error; (2) costs incurred in connection with the photocopying and mailing of the notice of error; (4) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X and RESPA. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

56.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### Count V – Failure to Acknowledge May 29, 2015 Request for Information
### Violation of Regulation X, Section 12 C.F.R. § 1024.36(c)

57.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

58.     Section 1024.36(c) of Regulation X provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request." 12 C.F.R. § 1024.36.

59.     Plaintiff sent to Defendant a Request for Information on May 29, 2015. See Exhibit "E".

60.     Defendant failed to provide to the Plaintiff a written response acknowledging the request for information sent on May 29, 2015 and is therefore in violation of 12 C.F.R. § 1024.36.

61.     As a result of Defendant's violation, Plaintiff was forced to send the Defendant a Notice of Error on July 27, 2015 in connection with the Defendant's failure. See Exhibit "M"

62.     As a result, Defendant incurred actual damages in the form of (1) costs to prepare each request for information and subsequent notices of error, including the July 27, 2015 Notice of Error; (2) costs incurred in connection with the photocopying and mailing of the requests for information and notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

63.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**Count VI – Failure to Respond to May 29, 2015 Request for Information**
**Violation of Regulation X, Section 12 C.F.R. § 1024.36(d)**

64.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

65.     Regulation X section 1024.36(d)(1) provides that a "servicer must respond to an information request by either: (i) [p]roviding the borrower with the requested information and contact information, including telephone number, for further assistance in writing; or (ii) [c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that  the servicer has determined that the requested information is

not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance." 12 C.F.R. § 1024.36(d)(1).

66.     Regulation X section 1024.36(d)(2) provides that a servicer must comply with the requirements in section 1024.36(d)(1) not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) for all requests for information other than requests for the identity of the owner of assignee of a mortgage loan. 12 C.F.R. § 1024.36(d)(2)(i)(B).

67.     Plaintiff sent to Defendant a Request for Information on May 29, 2015. See Exhibit "E".

68.     Defendant failed to timely provide a response to Plaintiff's May 29, 2015 Request for Information and is therefore in violation of Regulation X section 1024.36.

69.     As a result of Defendant's violation, Plaintiff was forced to send to the Defendant a  Notice of Error on July 27, 2015. See Exhibit "M".

70.     As a result, Plaintiff incurred actual damages in the form of (1) costs to prepare each subsequent request for information and subsequent notices of error, including the July 27, 2015 Notice of Error; (2) costs incurred in connection with the photocopying and mailing of the requests for information and notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

71.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**Count VII – Failure to Acknowledge June 26, 2015 Notice of Error**
**Violation of Regulation X, Section 12 C.F.R. § 1024.35(d)**

72.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

73.     Under § 1024.35(b)(11), the term "error" is defined as including "[m]oving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of s 1024.41(g) or (j)." 12 C.F.R. § 1024.35(b)(11).

74.     Regulation X requires that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error. 12 C.F.R. § 1024.35(d).

75.     On June 26, 2015, Plaintiff sent to Defendant a notice of error with allegations that the Defendant and its foreclosure attorneys were moving towards an order of a foreclosure sale while the Plaintiff's complete loss mitigation application was still pending, which constitutes a violation of Regulation X, § 1024.41(g). See Exhibit "F".

76.     Defendant failed to timely acknowledge the June 26, 2015 Notice of Error and is therefore in violation Regulation X, § 1024.35(d).

77.     As a result of Defendant's violation, Plaintiff was forced to submit a second Notice of Error on this issue on July 13, 2015. See Exhibit "J".

78.     As a result, Defendant incurred actual damages in the form of (1) costs to prepare each subsequent request for information and notice of error, including the July 13th Notice of Error; (2) costs incurred in connection with the photocopying and mailing of the notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those

alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

79.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### Count VIII – Failure to Acknowledge July 13, 2015 Notice of Error
### Violation of Regulation X, Section 12 C.F.R. § 1024.35(d)

80.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

81.     Under § 1024.35(b)(11), the term "error" is defined as including "[m]oving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of s 1024.41(g) or (j)." 12 C.F.R. § 1024.35(b)(11).

82.     Regulation X requires that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error. 12 C.F.R. § 1024.35(d).

83.     On July 13, 2015, Plaintiff sent to Defendant a notice of error with allegations that the Defendant and its foreclosure attorneys had conducted a foreclosure sale while the Plaintiff's complete loss mitigation application was still pending, which constitutes a violation of Regulation X, § 1024.41(g). See Exhibit "J".

84.     Defendant failed to timely acknowledge the July 13, 2015 Notice of Error and is therefore in violation Regulation X, § 1024.35(d).

85.     As a result of Defendant's violation, Plaintiff was forced to submit a subsequent Notice of Error on this issue on July 27, 2015. See Exhibit "N".

86.     As a result, Defendant incurred actual damages in the form of (1) costs to prepare each subsequent request for information and notice of error, including the July 27th Notice of Error; (2) costs incurred in connection with the photocopying and mailing of the notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

87.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### Count IX – Failure to Timely Evaluate Loss Mitigation Application
### Violation of Regulation X, Section 12 C.F.R. § 1024.41(c)(1)

88.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

89.     Section 12 C.F.R. § 1024.41(c)(1) provides:

"(1) **Complete loss mitigation application**. If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:

(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

90.     Defendant send the Complete Application Letter to Plaintiff on May 7, 2015 acknowledging receipt of a complete loss mitigation application. See Exhibit "A".

91.     However, Defendant failed to timely and properly evaluate the Plaintiff for all loss mitigation options available to the Plaintiff and is therefore in violation of 12 C.F.R. § 1024.41(c)(1).

92.     As a result of the Defendant's violation, the Plaintiff was forced to submit a Notice of Error on July 27, 2015 and again on November 9, 2015 giving the Defendant notice of the above aforementioned violations. See Exhibits "O" and "R".

93.     As a result, Defendant incurred actual damages in the form of (1) costs to prepare each subsequent request for information and notice of error, including the July 27th and November 9th Notices of Error; (2) costs incurred in connection with the photocopying and mailing of the notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

94.     Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### Count X – Failure to Acknowledge July 27, 2015 Notice of Error
### Violation of Regulation X, Section 12 C.F.R. § 1024.35(d)

95.     Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

96.     Under § 1024.35(b)(11), the term "error" is defined as including "[m]oving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of s 1024.41(g) or (j)." 12 C.F.R. § 1024.35(b)(11).

97.     Regulation X requires that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error. 12 C.F.R. § 1024.35(d).

98.     On July 27, 2015, Plaintiff sent to Defendant a notice of error with allegations that the Defendant had failed to timely and properly evaluate the Plaintiff's loss mitigation application which constituted a violation of Regulation X, § 1024.41(c). See Exhibit "O".

99.     Defendant failed to timely acknowledge the July 27, 2015 Notice of Error and is therefore in violation Regulation X, § 1024.35(d).

100.    As a result of Defendant's violation, Plaintiff was forced to submit a subsequent Notice of Error on this issue on November 9, 2015. See Exhibit "R"

101.    As a result, Defendant incurred actual damages in the form of (1) costs to prepare each subsequent request for information and notice of error, including the November 9th Notice of Error; (2) costs incurred in connection with the photocopying and mailing of the notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

102.    Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### Count XI – Use of Unfair or Unconscionable Means to Collect a Debt
### Violation of FDCPA, 15 U.S.C. § 1692(f)

103.    Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

104.    15 U.S.C. § 1692(f) provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692(f).

105.    Defendant is a debt collector as defined in 15 U.S.C. § 1692(a)(6).

106.    On May 7, 2015, Plaintiff sent to Defendant the Complete Application Letter which acknowledging its receipt of the Plaintiff's complete loss mitigation application. See Exhibit "A"

107.    However, despite the Defendant's mailing of the Complete Application Letter, which prohibited its pursuit of a foreclosure sale, Defendant's counsel directly caused the issuance of a notice of sale in the Foreclosure action on May 27, 2015, which gave public notice of the foreclosure sale of the Property scheduled for July 7, 2015. See Exhibit "C".

108.    On July 2, 2015, Defendant filed an Emergency Motion to Cancel Foreclosure Sale in the Foreclosure Action on the alleged basis that it was actively reviewing the Plaintiff for loss mitigation. That motion was denied on July 7, 2015, which resulted in the foreclosure sale of the Property. *See* Exhibit "G".

109.    Because of the Defendant's efforts in having the notice of sale issued, and because of its inability to have the foreclosure sale canceled, the Plaintiff was forced to retain the services of an attorney in order to file an Objection to Sale. *See* Exhibit "K".

110.    On August 31, 2015, an order was entered granting the Plaintiff's Objection to Sale and rescheduling the foreclosure sale for January 12, 2016. *See* Exhibit "Q".

111.    The Defendant's decision to have the Notice of Sale issued after having already acknowledged receipt of the Plaintiff's complete loss mitigation application, and therefore knowing that it was prohibited from pursuing a foreclosure sale, is remarkably unfair and

unconscionable mean of debt collection. Further, it appears that the Defendant's actions are structured so that it ensures that the foreclosure sale of the Property occurs, in the event a motion to cancel foreclosure sale was denied. If the Defendant's true intentions were to cancel the sale it would have simply refused to have a notice of sale issued, which would void the foreclosure sale of the Property.

112.    In fact, Defendant's above referenced actions constitute an unfair and unconscionable method of debt collection in direct violation of the FDCPA, 15 U.S.C. § 1692(f).

113.    As a result, the Defendant has incurred damages in the form of: (1) attorney's fees incurred in the Plaintiff's foreclosure action including but not limited to the filing of the objection to sale, as a result of Defendant's unfair and unconscionable actions; (3) statutory damages in the amount of $1,000 pursuant to 15 U.S.C. 1692(k)(a)(2)(A); and (4) reasonable attorney's fees and costs pursuant to 15 U.S.C. 1692(k)(a)(3).

**Count XII – Use of False, Deceptive, or Misleading Representation**
**Violation of FDCPA, 15 U.S.C. § 1692(e)**

114.    Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

115.    15 U.S.C. § 1692(e) provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e).

116.    Defendant is a debt collector as defined in 15 U.S.C. § 1692(a)(6).

117.    On May 7, 2015, Plaintiff sent to Defendant the Complete Application Letter which acknowledging its receipt of the Plaintiff's complete loss mitigation application. See Exhibit "A"

118.    However, despite the Defendant's mailing of the Complete Application Letter, which prohibited its pursuit of a foreclosure sale, Defendant's counsel directly caused the issuance

of a notice of sale in the Foreclosure action on May 27, 2015, which gave public notice of the foreclosure sale of the Property scheduled for July 7, 2015. See Exhibit "C".

119.    On July 2, 2015, Defendant filed an Emergency Motion to Cancel Foreclosure Sale in the Foreclosure Action on the alleged basis that it was actively reviewing the Plaintiff for loss mitigation. That motion was denied on July 7, 2015, which resulted in the foreclosure sale of the Property. *See* Exhibit "G".

120.    Because of the Defendant's efforts in having the notice of sale issued, and because of its inability to have the foreclosure sale canceled, the Plaintiff was forced to retain the services of an attorney in order to file an Objection to Sale. *See* Exhibit "K".

121.    On August 31, 2015, an order was entered granting the Plaintiff's Objection to Sale and rescheduling the foreclosure sale for January 12, 2016. *See* Exhibit "Q".

122.    The Defendant's decision to have the Notice of Sale issued after having already acknowledged receipt of the Plaintiff's complete loss mitigation application, and therefore knowing that it was prohibited from pursuing a foreclosure sale, is remarkably unfair and unconscionable mean of debt collection. Further, it appears that the Defendant's actions are structured so that it ensures that the foreclosure sale of the Property occurs, in the event a motion to cancel foreclosure sale was denied. If the Defendant's true intentions were to cancel the sale it would have simply refused to have a notice of sale issued, which would void the foreclosure sale of the Property.

123.    Defendant's above referenced actions constitute a deceptive and misleading method of debt collection in direct violation of the FDCPA, 15 U.S.C. § 1692(e).

124.    As a result, the Defendant has incurred damages in the form of: (1) attorney's fees incurred in the Plaintiff's foreclosure action, including but not limited to the filing of the objection to sale, as a result of Defendant's unfair and deceptive actions; (2) statutory damages in the amount

of $1,000 pursuant to 15 U.S.C. 1692(k)(a)(2)(A); and (3) reasonable attorney's fees and costs pursuant to 15 U.S.C. 1692(k)(a)(3).

## `Prayer for Relief

Wherefore, Plaintiff demands final judgment against SPS providing for all of the following:

  a. awarding actual damages that have been and may be proximately caused by SPS's violation of the RESPA, Regulation X, and the FDCPA;

  b. statutory damages under RESPA for Seterus' pattern and practice of non-compliance and under FDCPA 15 U.S.C. 1692(k)(a)(2)(A);

  c. prevailing party attorneys' fees and costs under 12 U.S.C. § 2605(f), and 15 U.S.C. 1692(k)(a)(3);

  d. awarding any further relief available under the law.

## Jury Demand

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

_____
February 15, 2017
Miami, FL

Respectfully submitted,

Ruzy Behnejad
Florida Bar No. 111894
ruzy@behnejadlaw.com
Behnejad Law PLLC
8724 Sunset Drive #261
Miami, FL 33173
Tel: 786.554.3999
Attorney for Plaintiff

*/s/ Ruzy Behnejad*
Ruzy Behnejad
Florida Bar No. 111894